James E. Pisano, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs December 5, 1983, to Judges ROGERS, MACPHAIL and BARRY, sitting as a panel of three.

*Mark E. Kogan, Kogan and Cogan,* for petitioner.

*John T. Kupchinsky,* Associate Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, May 17, 1984:

This appeal results from an order of the Unemployment Compensation Board of Review (Board), dated September 21, 1981, affirming a decision of the referee which ordered petitioner-claimant James E. Pisano to repay $13,228.00, the amount of benefits claimant had collected over a two-year period. The referee held that claimant had been self-employed during the questioned period and was, therefore, ineligible to collect those benefits.

From March, 1976, until December, 1977, claimant managed a restaurant known as S. W. Churchill, Ltd. (Churchill). Claimant applied for, and was granted, unemployment benefits which he collected for the first seven months of 1978. Churchill went out of business in early 1978. Claimant then began managing a restaurant for Paulsboro Enterprises, Inc., t/a Restaurante Focolare (Focolare). Claimant again applied for benefits in February, 1979, claiming he had been laid off because business was slow. Claimant collected benefits from February, 1979, until the end of May of that year when he was called back to manage Focolare. Claimant retained that position until November, 1979, when he again applied for benefits, claiming he had been laid off. Claimant collected benefits from that point until November, 1980.

At some time in 1981, the Office of Employment Security (OES) received information that claimant had actually been self-employed for the periods he had managed the two restaurants. Claimant reported to the OES and discussed the matter. The OES conducted an investigation, following which it issued a series of determinations which held that claimant had been a self-employed businessman and therefore was not entitled to the benefits he had collected; the OES also held that claimant had withheld pertinent information and was, therefore, responsible for repaying the entire amount.

A hearing on claimant's appeal was scheduled for April 2, 1981. Claimant's present counsel was notified of the hearing on March 30, 1981. The following day, counsel requested a thirty day continuance because of scheduling conflicts. The hearing was rescheduled for April 8, 1981, and counsel informed the referee he would make every effort to clear his schedule so that he could attend. Nevertheless, on the morning of the rescheduled hearing, counsel had delivered to the referee a letter which stated he was still unavailable; he again requested a continuance. The referee, however, refused the request and held the "hearing" as scheduled. Despite the fact that neither claimant nor his attorney were present, the referee admitted various documents pertaining to the OES' investigation which allegedly proved that claimant had been both a stockholder and officer in each of the corporations. Also included was an eligibility review form which claimant completed in September, 1980, containing the following question, "Are you an officer of a corporation, union or other organization?" That form also indicated claimant's response of "No". Based on this evidence, the referee made factual findings which, in his view, supported the legal conclusions

that claimant had been self-employed and must repay the $13,228.00. Claimant filed a timely appeal to the Board, alleging that the referee's refusal to grant the continuance had denied claimant the right to counsel and that the decision was erroneous as a matter of both fact and law.

The Board, after receiving claimant's petition for appeal, ordered a second hearing to allow both claimant and the employers to present evidence. The hearing, which was held before another referee, began with that referee's recitation of the documents which had been admitted at the first hearing. The referee asked claimant's counsel if he had any objection to the documents and counsel responded:

I have an objection to any document which suggests that Mr. Pisano had any ownership interest whatsoever in the entity S. W. Churchill Limited, a Pennsylvania corporation. Further I think the record ought to reflect that there were no appearances entered at the first determination hearing because I had notified the Referee then that I was unavailable due to a schedule conflict. It was that reason an appeal was taken and allowed. *Which I would point out that the findings as such were made entirely without the benefit of testimony* and it is been the claimant's position from the beginning that any, the nature of these allegations were false and in no way is this a post facto representation. Mr. Pisano did not come to me after Mr. Brauer's adverse determination. We were in the case from the beginning. And I just want the record to indicate that this was afterward we got counsel, we were ready to proceed, but it was my unavailability on that occasion and I think it was regretable I might say and I think

the affadavit [sic] which is also on record and in your file makes that pretty clear. (Emphasis added.)

(T. 2, June 24, 1981.)

The following testimony was presented at the hearing. Irvin Tabaac testified that he was the owner of 100% of the stock of Churchill. He also testified that claimant had worked for him as a manager of that restaurant. Bruce Kaplan, Tabaac's accountant, confirmed Tabaac's testimony concerning ownership of Churchill.

Tabaac testified further that the stock of Focolare was held by himself, Anthony Capaldi, William Bradley and claimant in equal shares. Capaldi and Bradley were strictly investors and the day-to-day operation of the restaurant was left to Tabaac and claimant. Claimant was given twenty-five per cent of the stock in return for his promise to manage Focolare for $500 per week. Claimant was given authority to hire and fire waiters, waitresses and bartenders. This testimony of Tabaac was corroborated by Capaldi and claimant, who also testified that he would pay for food delivered to the restaurant if he was there at the time of delivery. Tabaac and Capaldi also testified that in November, 1979, Focolare was losing money. Since claimant was the only shareholder without an outside source of income, Tabaac, Capaldi and Bradley voted to lay off claimant as manager. The trio then began working at the restaurant without pay to protect their financial investments. During this period, no one was hired to manage the restaurant. Following the second hearing, the Board, after reviewing the entire record, affirmed the decision of the first referee. This appeal followed.

The Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as*

*amended,* 43 P.S. §802 provides: "An employe shall be ineligible for compensation for any week— . . . (h) [i]n which he is engaged in self employment. . . ." As the Supreme Court has stated in the seminal case of *Starinieri v. Unemployment Compensation Board of Review,* 447 Pa. 256, 258, 289 A.2d 726, 727 (1972), (citations omitted), "Thus a self-employed person who becomes an 'unemployed businessman' is ineligible to receive unemployment compensation. . . . The Unemployment Compensation Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen. . . ." The court went on to state the area of inquiry in these cases. "[T]he proper test is whether the employee 'exercise a substantial degree of control over the corporation'; if so, he is a businessman and not an employee." *Id.* at 260, 289 A.2d 728. We must, however, remember:

> Our cases in this area of the law indicate that *in each instance each case will be determined upon its own facts.* Thus, the percentage of stock owned is not in and of itself determinative of the issue, Rolland v. Unemployment Compensation Board of Review, 53 Pa. Commonwealth Ct. 562, 418 A.2d 807 (1980); the fact that Claimant is an officer of the corporation is not in and of itself determinative of the issue, George v. Unemployment Compensation Board of Review, 57 Pa. Commonwealth Ct. 578, 426 A.2d 1248 (1981); and, the Claimant's title is not determinative in and of itself, Starinieri. It is only when consideration is given to all of these factors as well as any others which might be indicia of control, that a determination of whether the Claimant is self-employed can be made. (Emphasis added.)

*Geever v. Unemployment Compensation Board of Review,* 65 Pa. Commonwealth Ct. 491, 494-95, 442 A.2d 1227, 1229 (1982).

A review of cases applying this standard is instructive. In *Starinieri,* the claimant was secretary-treasurer and executive manager of the corporation. Additionally, he owned thirty-seven and one-half per cent of the corporation's capital stock. The president owned forty per cent with the remaining twenty-two and one-half per cent in the hands of two other stockholders. Without offering any explanation, the court concluded that these facts compelled the legal conclusion that the claimant was an unemployed businessman and, therefore, ineligible for unemployment benefits.

In *Rolland v. Unemployment Compensation Board of Review,* 53 Pa. Commonwealth Ct. 562, 418 A.2d 807 (1980), the claimant was president of the corporation and a member of its board of directors. He owned approximately one per cent of the stock, with ninety-one per cent owned by the chairman of the board of directors. He further had authority to hire and fire employees and regularly signed checks for the corporation. The Court concluded that this claimant was an unemployed businessman. The Court placed emphasis on claimant's statement that he exercised almost total control over the policies of the corporation.

In *George v. Unemployment Compensation Board of Review,* 57 Pa. Commonwealth Ct. 578, 426 A.2d 1248 (1981), the claimant was secretary-treasurer of the corporation, the president of which owned sixty per cent of the stock with claimant holding twenty per cent and the vice president owning the remaining twenty per cent. As treasurer, claimant signed the payroll checks. As a member of the board of directors, claimant had voting rights, but the final determina-

tions were in the hands of the president. Claimant's primary responsibility was to set up new shops and to train employees. The Board held that the claimant was an unemployed businessman and, therefore, ineligible for benefits. This Court reversed, stating, "[W]e believe that the evidence clearly shows that the claimant had little or no effect on the policies or management of [the corporation], and that he was in fact simply a 'worker' as opposed to a 'businessman'." *Id.* at 581-82, 426 A.2d at 1249.

The pertinent findings of fact of the referee in this case are as follows:

1. Claimant was last associated with Ristorante Focolare as a restaurant manager for approximately two years until November 24, 1979, when his last salary was $500.00 a week;

2. Claimant was secretary of the corporation (Paulsboro Enterprises, Inc. t/a Ristorante Focolare) beginning in 1979;

3. Claimant had a voice in the hiring and firing of employees, as well as the authority to purchase inventory;

8. Claimant was associated with S. W. Churchill, Ltd., as a restaurant manager for approximately three years until December 27, 1977, when his last salary was $300.00 a week;

9. Claimant was corporate secretary of S. W. Churchill, Ltd., and owned 33⅓% of the stock.

Based on these findings of fact, the referee and the Board concluded that claimant had been self-employed and should not have collected the benefits which he had been paid.

Our scope of review is to determine whether the findings of fact are supported by substantial competent evidence and whether the legal conclusions

drawn from those findings are correct. *Rowles v. Unemployment Compensation Board of Review*, 56 Pa. Commonwealth Ct. 613, 425 A.2d 492 (1981). In *Ellis v. Unemployment Compensation Board of Review*, 56 Pa. Commonwealth Ct. 628, 632, 425 A.2d 496, 498 (1981), we stated:

> It is well settled that in cases of this nature hearsay evidence which is properly objected to is not competent to support a finding of the Board. Hearsay evidence which is admitted without objection may support a finding of the Board only if it is corroborated by competent evidence in the record. A finding of fact based solely on hearsay, however, will not stand. Walker v. Unemployment Compensation Board of Review, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976).

Claimant alleges that the evidence presented does not support the findings of fact in this case and, further, that the findings of fact do not support the legal conclusions drawn therefrom. Since the documents admitted at the first hearing were classic hearsay, only those findings of fact which were corroborated by other competent evidence in the record can stand.[1] *Ellis*. As the only competent evidence in this record is the testimony of the witnesses at the second hearing, *See Perminter v. Unemployment Compensation Board of Review*, 57 Pa. Commonwealth Ct. 426, 426 A.2d 245 (1981), our search for corroborative evidence is limited to the testimony at that hearing.

A review of that testimony reveals that none of the witnesses testified that claimant was either a stock-

---

[1] Using this approach, we find it unnecessary to decide whether claimant's objection to the admission of the documents on hearsay grounds at the commencement of the second hearing was a timely objection.

holder or officer in Churchill. To the contrary, claimant, Tabaac and Kaplan all testified that Tabaac owned 100% of the stock of that entity. Since the only finding of fact which would arguably support the legal conclusion that claimant had been self-employed is not supported by the record, the Board's holding that claimant should not have been entitled to benefits based on his association with Churchill must be reversed.

Claimant's association with Focolare stands on somewhat different footing. The record does contain testimony that claimant owned twenty-five per cent of the stock therein. Further, testimony of various witnesses showed that claimant did have the authority to hire and fire those transient employees prevalent in the restaurant business, i.e., waiters, waitresses and bartenders. Claimant testified that, as manager, he would pay for items delivered when he was on duty. There is no testimony that claimant was an officer of Focolare. We are, therefore, left with a situation where the claimant managed a restaurant in return for a salary and twenty-five per cent of the stock. Claimant could hire and fire the bartenders, waiters and waitresses; in addition, he would pay for items delivered to the restaurant. Even if the latter could be construed as corroborative of finding of fact 3, i.e., claimant had authority to purchase inventory, we do not believe the findings as corroborated by competent evidence in the record support the legal conclusion that claimant was self-employed at Focolare. In George, the claimant was a stockholder, an officer who signed payroll checks and a voting member of the board of directors and the employee responsible for opening new repair shops. There, we found that those facts did not support a conclusion that the claimant had substantial control over the policies of that cor-

poration and we believe a similar conclusion is mandated here.[2]

ORDER

AND NOW, May 17, 1984, the order of the Unemployment Compensation Board of Review, at No. B-199574, dated September 21, 1981, is reversed.

---

[2] Because we have concluded that claimant was entitled to the benefits he received we need not reach the fault overpayment issue.